McGehee Realty & Lumber Company *v.* Kennedy.

4-6011                                              141 S. W. 2d 524

Opinion delivered June 17, 1940.

H. *Jordan Monk,* for appellant.

H. *K. Toney,* for appellee.

Humphreys, J.   On the 24th day of November, 1939, appellant brought suit in the Jefferson county chancery court against appellees,. alleging that Roy T. Kennedy bought materials from it, the last item purchased being on May 20, 1939, to construct a residence on lot 13, block 35, College Heights Addition to the City of Pine Bluff, Arkansas, which lot he owned, in the total sum of $176.76, paid thereon $45.81, leaving a balance of $130.97 due thereon on May 20, 1939; that the materials purchased were used by him in the construction of a residence on said lot; that within ninety days after the last item of material was furnished, appellant filed its materialman's lien upon said lot and building, in the manner prescribed by law, and after giving Roy T. Kennedy, ten days proper, legal and prior notice of its intention to do so, in the office of the circuit clerk of Jefferson county, Ark-

ansas; that appellees D. T. Kennedy and his wife, Mrs. D. T. Kennedy, claimed some interest in said lot.

Appellant prayed for a judgment against Roy T. Kennedy for $131.97, which amount included $1, the cost of filing the lien, with interest, at the rate of 6% per annum from May 20, 1939, until paid, and that said judgment be declared a first and paramount lien upon the lot and improvements thereon, and that the lien be .foreclosed and the lot and improvements be ordered sold to pay the judgment.

Appellees, Roy T. Kennedy and his wife, Mrs. Roy T. Kennedy, filed answer denying each and every material allegation in appellant's complaint.

Appellees, D. T. Kennedy and his wife, Mrs. D. T. Kennedy, filed an answer denying that they were indebted to appellant in the sum of $130.97 or in any other sum, and denying that Roy T. and Mrs. Roy T. Kennedy are the owners of the property mentioned and set out in plaintiff's complaint, praying for the dismissal of the complaint against them.

During the trial of the cause and after the time had expired for E. E. Swarm to file a lien against the property for labor he obtained permission from the court to file an intervention setting up that he had performed labor on the building for Roy T. Kennedy under an agreement with him that Roy T. Kennedy was to pay him $30.60 for the labor he had performed and was permitted to file same which he did on December 28, 1939. The account he attached to the intervention or claim for a lien showed that the last item of labor he had performed was for hanging a door on April 21, 1939.

An amendment to the complaint was permitted to be read into the record by the attorney for appellant setting up that D. T. Kennedy and his wife were estopped on account of their conduct in standing by and permitting the improvements to be made on the lot, to claim the fee in the lot free from any lien on the part of appellant for materials furnished Roy T. Kennedy.

The attorney for D. T. Kennedy was permitted to read into the record a denial of the allegation of estoppel and the alleged facts with reference to standing by and permitting the improvements to be made.

The cause was submitted to the court upon the pleadings and the testimony of the several witnesses introduced resulting in a finding that the evidence did not show that the contract to furnish materials was made with D. T. Kennedy and that appellant failed to give D. T. Kennedy any notice of the claim of appellant or that he intended to file the lien on said property.

The court rendered personal judgment against Roy T. Kennedy for the balance due on the lien and a personal judgment in favor of Swarm for the work he did on the building, but dismissed appellant's complaint and Swarm's intervention claiming a lien upon the lot.

H. H. McGehee, who was the president and manager of appellant company testified that he made a deal with Roy T. Kennedy to furnish him materials that went into the house on the lot in question; that Roy T. Kennedy came to his office and represented that his father had given him the lot, and that he was going to build a small house on it; that Roy T. Kennedy made him a small cash payment on the materials and agreed to pay him $10 a month for the balance due for such materials as he used in the construction of the building; that Roy T. Kennedy promised to bring him a deed from his father, but instead of doing so he brought his father's deed which contained the description of the lot along with other lots; that he furnished materials to Roy T. Kennedy in the total sum of $176.78, but he failed to pay the balance due therefor amounting to $130.97, and that he filed a materialman's lien within the statutory period; that D. T. Kennedy at no time advised him not to sell the lumber to his son or that the lot belonged to D. T. Kennedy; that he knew of no dispute of the title until the residence was completed; at the time he furnished the materials, Roy T. Kennedy told him his father had given him the lot and was going to execute a deed for same to him.

E. E. Swarm, who filed an intervention setting up a claim and lien for labor done upon the house, testified that D. T. Kennedy first talked to him and told him to help the boy along in getting started; that D. T. Kennedy told him he had given his son the lot and that he thought his son would be able to construct the building if he helped him start it and that he thought his son would be able at some time to pay him for the labor, but that as yet he had nothing to do with the building himself; that before he began work D. T. Kennedy and his son, Roy T. Kennedy, both told him that D. T. Kennedy had given the lot to his son, Roy T. Kennedy; that he did work on the residence to the amount of $30.60 under an agreement with Roy T. Kennedy that he would pay him for the work when he got able; that D. T. Kennedy frequently came by to see how they were getting along while they were constructing the building.

Roy T. Kennedy testified that he bought the materials from appellant and told him that he was going to build a house on one of his dad's lots; that he told Mr. McGehee the lot was his dad's and did not tell him that his father was going to deed him the lot; that he did not take his father's deed to Mr. McGehee but took the description of the lot to him on a piece of paper; that his father gave him permission to build the house on the lot but never agreed to make a deed to him for it; that when he asked his father to allow him to build a house on the lot his father told him to do just what he wanted to about it, but that he (his father) wasn't going to have anything to do with it; that Mr. Swarm, the carpenter, asked about helping him construct the building, and he told him he didn't have any money then, but he would pay him some day, and that his dad told Swarm the same thing.

D. T. Kennedy testified that he owned the lot, but that he never gave it to his son, and that he never told Swarm he had given the lot to his son, but admitted that he had told Swarm if he helped his son that some day

his son might be able to pay him, The following questions and answers appear in his testimony:

"Q. Do you mean to tell the court that you didn't tell Mr. Swarm to help the boy along and get him started off?

"A. I didn't tell him to do anything. I didn't hire anybody to work out there. He asked me if I was going to hire him, and I told him I didn't have anything to do with it at all.

"Q. But you did tell him to help the boy along and get him started off?

"A. Say I did."

When his son got after him and said he wanted to build out there on one of those lots, he told his son they were not for sale, but that "I just told him to do whatever he wanted to do; I said those lots are not for sale." He also testified that he had nothing to do with buying the lumber and that he did not request appellant to charge any materials to him, and that he did not give his son any authority to obligate him in the construction of same.

He further testified that he claims whatever is on the lot; that he bought and paid for the lot, and anything that was on it belonged to him.

We think the weight of the evidence in this case shows that D. T. Kennedy gave the lot in question to his son and put him in possession thereof with authority to construct a dwelling thereon. His son was a married man and had no money with which to buy a lot or build a house thereon. Swarm's testimony to the effect that D. T. Kennedy and Roy T. Kennedy both told him that D. T. Kennedy had given him the lot when considered in connection with D. T. Kennedy's conduct in frequently visiting the premises while the dwelling was being constructed is sufficient to show that he made an absolute gift of the lot to Roy T. Kennedy and put him in possession thereof. The record reflects that Roy T. Kennedy and his wife did all the work on the house except

what little help they got from Swarm. Certainly they would not have done this unless the lot had been given to Roy T. Kennedy. In view of the fact that Roy T. Kennedy had no money to buy the lot or build the house it was quite a natural thing for D. T. Kennedy, who had a number of lots, to give him one. The testimony of D. T. Kennedy and Roy T. Kennedy to the effect that D. T. Kennedy told Roy T. Kennedy he might do as he pleased about building the house on the lot is not in accordance with business principles. D. T. Kennedy testified that he refused to sell Roy T. Kennedy the lot and no claim is made that Roy T. Kennedy had a lease thereon for a definite term, so it is unreasonable to conclude that he built a house on the lot from which he might be ousted at the will of his father or upon the death of his father. The only reasonable conclusion to draw from the evidence in this case is that D. T. Kennedy gave the lot to his son just as he had told Swarm he had done else Roy T. Kennedy and his wife would have been very foolish people to construct a residence on the lot.

The court correctly rendered a judgment in favor of appellant and E. E. Swarm for the amounts due them respectively and in dismissing E. E. Swarm's intervention to establish a lien on the property. He had not filed any lien against the property in accordance with the law. The court erred, however, in dismissing appellant's complaint seeking to establish a materialman's lien on the lot and on account of that error the cause is remanded with instructions to the trial court to declare a lien on the lot and dwelling in favor of appellant for the amount due it, and order a sale of the lot to pay the amount of the indebtedness, costs, etc.